BILLY REEDER *v.* WESTERN FIRE INS. CO. ET AL

5-4065                                         410 S.W. 2d 122

Opinion delivered January 9, 1967

*Garner & Parker,* for appellant.

*Wayland A. Parker* and *Warner, Warner, Ragon & Smith,* for appellees.

CARLETON HARRIS, Chief Justice. This is an action, instituted by appellant, Billy Reeder, against nine insurance companies, to recover on policies as a result of a fire which occurred at the Stardust Club near Fort Smith, Arkansas. The contents of the building, including furniture, fixtures, equipment, supplies, improvements, etc., were insured in the amount of $18,500.00. Appellees, the nine insurance companies, answered, denying each material allegation, and pleading further, *inter alia,* that appellant should not recover for the reason that he had failed to comply with the provisions of the several policies of insurance, in that he had not filed a proof of loss within sixty days as provided by each policy. The cause proceeded to trial before a jury, and at the conclusion of appellant's evidence, appellees moved for a directed verdict in their favor; the motion was granted, and the jury was instructed to return its verdict for the defendants. From the judgment so entered, appellant brings this appeal.

It is admitted that appellant did not file a proof of loss with the appellee companies, but Reeder's contention is that appellees waived this requirement. The question therefore, presently before the court, is whether there was sufficient evidence of waiver offered by appellant to present a jury question.

As will be subsequently pointed out, there was evidently a suspicion that arson had been committed when the fire occurred, and, in fact, on the next day, Reeder and employees were called to the Prosecuting Attorney's office to answer questions concerning the fire; thereafter, appellant was charged with arson, and on August 23 and 24, 1965, was tried for this offense in the Fort Smith District of the Sebastian County Circuit Court. The trial resulted in an acquittal.

It should be remembered that on appeal, in passing on the question of the correctness of the trial court's action in directing a verdict, we must take that view of evidence most favorable to the party against whom the verdict is directed.

As stated in *Barrentine* v. *The Henry Wrape Company,* 120 Ark. 206, 179 S. W. 328:

"In determining on appeal the correctness of the trial court's action in directing a verdict for either party, the rule is to take that view of evidence that is most favorable to the party against whom the verdict is directed, and where there is any evidence tending to establish an issue in favor of the party against whom the verdict is directed, it is error to take the case from the jury. [Citing cases]"

Without discussing all of the testimony, we will mention two instances that, taken together with findings at the pre-trial conference, precluded the court from properly directing a verdict. Reeder testified that he was notified of the fire about 6:30 or 7:00 o'clock on the morning after it occurred; that he immediately went to the premises, arriving there about 7:30, and that Robert Smith, an insurance adjuster, was already there, together with the State Police. Later in the day he returned, and Smith was also present at that time. From appellant's testimony:

"Well, Mr. Smith was out there then so we walked back in to the kitchen and I had one of those big meat boxes that was a freezer on one side and just a regular icebox on the other side so I opened it up to examine the meat and I could see that it was still frozen so I told him 'lets inventory this out and maybe I can save some of it.' And he said 'No, you just lock it up, everything is just a total loss.'

"Q. And that was Robert Smith the adjuster for the insurance company?

"A. Right."

The court had previously, in its pre-trial order of March 4, 1966, found:

"* * * It is conceded that Robert D. Smith is the Manager of the local branch office of General Adjustment Bureau. It is conceded that Smith was the adjuster for the defendant companies. The existence of an agency relationship between Mr. Smith and the defendant insurance companies does not appear to be in doubt, but the question of whether or not his conduct would operate as a waiver is reserved."

Likewise, Earl Flaherty, appellant's uncle, testified that, upon hearing about the fire, he went to the scene and saw Kit Barton, who was an insurance agent selling policies for the insurance firm of Sagely, Bennett, and Barton, and who had sold some of the insurance to Reeder. According to Flaherty, he was discussing the fire with Barton, and the latter said, "Well, he had just gutted it." Flaherty then stated that they walked into the kitchen, and he (Flaherty) said that it did not look too bad in there, and Barton replied, "No, he didn't start it here in the kitchen where they ususally start them;" that when Flaherty asked if he should "stay around and see that nothing was bothered or destroyed," "No, it was totaled out," subsequently explaining to Flaherty that he meant that there was a total loss. The witness stated that Burton did not say who he was referring to as "he," but when Flaherty mentioned that Reeder was his nephew, Barton "just turned around and started out the door." It is emphasized by appellees that, according to Flaherty's testimony, Barton never did state to whom "he" referred, but we think, under all the evidence, it could properly be considered that the reference was to Reeder. The pre-trial order finds that Barton "is an agent selling policies for the insurance firm of Sagely, Bennett & Barton asserts that Mr. Barton cannot waive a proof of loss and on which policies the suit is brought. The defendant

for his company. The defendant acknowledges, however, that if a proof of loss had been submitted it properly could have been submitted to Mr. Barton. The court stated that, under these circumstances, his authority to waive a proof of loss would be considered as established, although a ruling on whether or not his alleged conduct amounted to a waiver was not resolved." It is our opinion that these findings, along with the testimony, particularly that of Smith, "*Everything* is just a total loss," presents the question of whether there was a waiver.

In addition, a rather pertinent finding is made in Paragraph 12 of the pre-trial order. It sets out that appellant concedes that he did not file a proof of loss, and then states, "The defendant does concede that a notice of loss was given." The record does not reflect how, or when, the notice of loss was given, but certainly, upon notice, the usual practice of an insurance company is to furnish proof of loss forms. In *American Fidelity Fire Insurance Company* v. *Winfield,* 225 Ark. 139, 279 S. W. 2d 836, the testimony reflected that appellee's landlord wrote to the insurance company, advising that appellee's automobile had been destroyed by fire. The company denied receiving such a letter, but this court held that the landlord's testimony that he properly mailed the letter, together with the presumption that it was received by the addressee, constituted substantial evidence to sustain the court's finding that notice was in fact received by the company. This court then said:

"It being determined that the company received notice of the loss, the next question that arises is: Did the insurance company's failure to acknowledge receipt of the notice of loss relieve the policyholder from furnishing proof of loss within the 60-day period provided by the policy?"

In answering this question in the affirmative, we quoted from Appleman's *Insurance Law and Practice,* Volume 5, § 3633:

"* * * 'It has been stated that unless there is a

bona fide attempt by the company to adjust a loss, there is a refusal to pay. Therefore, the mere effect of silence or inaction might be sufficient to excuse compliance.' ''

Further:

''In *Ward* v. *Pacific Fire Insurance Company,* 115 S. C. 53, 104 S. W. 316, it is said: 'While there was no express or unequivocal denial of liability during the period of time prescribed in the policy within which proofs of loss were to be and might have been furnished, yet defendant's silence, in the light of facts and circumstances, clearly warranted the inference that liability was and would be denied, as it was in fact denied, and plaintiff was warranted in so believing and in acting accordingly. . . . The company received the notice of loss in due time, and, in fairness, it should have notified plaintiff that he must furnish proofs of loss, as required by the policy, if it intended to pay the loss.' ''

Here, there is a finding that a notice of loss was given.

For the reasons herein stated, we think there was a jury question as to waiver, and the judgment is accordingly reversed and the cause remanded for further proceedings not inconsistent with this opinion.